# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK

---

JEFFREY C.[1],

                               Plaintiff,

       v.

                                     8:18-CV-94 (ATB)

COMMISSIONER OF SOCIAL SECURITY,

                               Defendant.

---

LAWRENCE D. HASSELER, ESQ., for Plaintiff
ELIZABETH ROTHSTEIN, Special Asst. U.S. Attorney for Defendant

ANDREW T. BAXTER, U.S. Magistrate Judge

## MEMORANDUM-DECISION and ORDER

This matter was referred to me, for all proceedings and entry of a final judgment, pursuant to the Social Security Pilot Program, N.D.N.Y. General Order No. 18, and in accordance with the provisions of 28 U.S.C. § 636(c), Fed. R. Civ. P. 73, N.D.N.Y. Local Rule 73.1, and the consent of the parties. (Dkt. Nos. 3,4).

## I.    PROCEDURAL HISTORY

Plaintiff filed an application for Disability Income Benefits ("DIB") on July 28, 2014, alleging disability beginning December 16, 2013. (Administrative Transcript ("T") 148-154; 176).  The application was denied initially on September 23, 2014. (T. 76).  Plaintiff requested a hearing, which was held by video on September 13, 2016

---

[1] In accordance with recent guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, which was adopted by the Northern District of New York in June 2018 in order to better protect personal and medical information of non-governmental parties, this Memorandum-Decision and Order will identify the plaintiff using only his first name and last initial.

before Administrative Law Judge ("ALJ") John P. Ramos. (T. 40-67). At the hearing, the ALJ heard testimony from plaintiff and plaintiff's wife, Amber Clark. *Id.* On February 1, 2017, ALJ Ramos found plaintiff was not disabled from December 16, 2013 through the date of his decision. (T. 26). Plaintiff requested Appeals Council review, and submitted additional evidence while the request was pending. (T. 1-2, 9-22).[2] The ALJ's decision became the Commissioner's final decision when the Appeals Council denied plaintiff's request for review on December 7, 2017. (T. 1-4).

## II. GENERALLY APPLICABLE LAW

### A. Disability Standard

To be considered disabled, a plaintiff seeking disability insurance benefits or SSI disability benefits must establish that he is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months . . . ." 42 U.S.C. § 1382c(a)(3)(A). In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

---

[2] Because the court is recommending remand of this case on other grounds, it is not necessary for the court to address the arguments of plaintiff that the Appeals Council improperly found that the evidence submitted would not have impacted the ALJ's determination that plaintiff was not disabled. On remand, the Commissioner should consider the evidence previously submitted to the Appeals Council, as well as any other updated evidence submitted.

2

42 U.S.C. § 1382c(a)(3)(B).

The Commissioner uses a five-step process, set forth in 20 C.F.R. sections 404.1520 and 416.920, to evaluate disability insurance and SSI disability claims.

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which meets or equals the criteria of an impairment listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience . . . . Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant can perform.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *see* 20 C.F.R. §§ 404.1520, 416.920. The plaintiff has the burden of establishing disability at the first four steps. However, if the plaintiff establishes that his impairment prevents him from performing his past work, the burden then shifts to the Commissioner to prove the final step. *Id.*

## B. Scope of Review

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supported the decision. *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013); *Brault v. Soc. Sec. Admin, Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012); 42 U.S.C. § 405(g)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir.

2012).  It must be "more than a scintilla" of evidence scattered throughout the administrative record.  *Id.*  However, this standard is a very deferential standard of review " – even more so than the 'clearly erroneous standard.'" *Brault*, 683 F.3d at 448.

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams on behalf of Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).  However, a reviewing court may not substitute its interpretation of the administrative record for that of the Commissioner, if the record contains substantial support for the ALJ's decision.  *Id*.  *See also Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

An ALJ is not required to explicitly analyze every piece of conflicting evidence in the record.  *See, e.g., Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983); *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981) ("...we are unwilling to require an ALJ explicitly to reconcile every conflicting shred of medical testimony...").  However, the ALJ cannot "'pick and choose' evidence in the record that supports his conclusions." *Cruz v. Barnhart*, 343 F. Supp. 2d 218, 224 (S.D.N.Y. 2004); *Fuller v. Astrue*, No. 09-CV-6279, 2010 WL 5072112, at *6 (W.D.N.Y. Dec. 6, 2010).

## III. **FACTS**

Plaintiff was 45 years old at the time of the ALJ's hearing. (T. 60, 671).  He had completed high school and subsequently attended some college classes, without obtaining a degree.  (T. 44, 177).  He resides at home with his wife and their seven

year-old son.[3]  (T. 51,175).  Plaintiff's employment history includes working as a corrections officer with the New York State Department of Corrections.  (T. 44).  Plaintiff testified he stopped working as a corrections officer in September 2013[4] due to his "back issues."  (T. 44-45).  He went out on "disability" multiple times during the course of his employment.  (T. 45).  After ending his employment as a corrections officer, plaintiff opened an archery shop in August 2015, which at the time of the hearing he operated with the assistance of one employee who was hired because "[plaintiff] couldn't handle being there that much." (T. 45-46).  The shop is open year round, and plaintiff testified he works at the shop five to six days per week, usually from around 8:30 a.m. to 5 p.m.  (T. 46).  His duties at the shop include taking care of customers, ordering material, and managing the business's finances.  (T. 46).  Furthermore, plaintiff testified his duties include constructing and assembling archery equipment.  (T. 47).  Plaintiff has not made any profits from his archery shop, but continues to maintain the business because he "[doesn't] want to sit at [his] house and do nothing all [his] life."  (T. 60).  He has "people" at the shop who will help him lift boxes and inventory.  (T. 54).

Plaintiff testified he has had chronic low back pain since 2002.  (T. 45).  He experiences the back pain "24/7 ," rating his pain on an average day as six out of ten with the assistance of his pain medicine.  (T. 56).  The pain "usually runs from a six to

---

[3]It was implied by plaintiff's wife, Amber Clark, that she and plaintiff have another, older son; however it is unclear from the record the elder son's age and/or living arrangement. (T. 64).

[4] Plaintiff testified that he stopped working in September 2013, however his disability application and corresponding records consistently reference December 2013 as his last date of work.

an eight, sometimes a nine." (T. 56). He has to sit down after five to ten minutes of washing dishes. (T. 53). He testified that when working at the archery shop, he has bar stools set up so he can work sitting down. (T. 53). He has a memory foam mattress on which to lie down in his office at the archery shop, where he has to take "a lot of breaks." (T. 54). Plaintiff testified he experiences pain sitting in an office chair, and has to stand up after "no more than ten minutes." (T. 54). Plaintiff testified he can lift between five and ten pounds, but if he tries to lift more than that, "it puts stress on his lower back." (T. 54). Plaintiff testified his sleep is "not good at all." (T. 55). He typically gets four to five hours of interrupted sleep per night. (T. 55). On the majority of nights, but not every day, plaintiff experiences muscle spasms in his lower back and the right side of his hip. (T. 58).

Plaintiff testified he can bathe himself most of the time, but many times his wife has to bathe him from his knees down because he can't bend over. (T. 61). He cannot tie his shoes and requires his wife to tie his shoes for him. (T. 61). He had to hire his friend's son to mow the lawn and trim weeds. (T. 52). His wife does "99 percent" of the chores in their house, although at times he will try to do the dishes. (T. 52-53). Plaintiff is a "very huge outdoors man." (T. 53). He testified he used to hunt, fish, cut firewood, and ride four-wheelers, all of which he has difficulty doing now. (T. 53).

Plaintiff stated he has had a total of three surgeries on his back – one in 2002, followed by two in April 2015. (T. 58). After his April 2015 surgeries, he had to wear a clamshell brace for six months. (T. 48). The April 2015 surgeries helped alleviate the hip and leg pain on his right side, but over the last three to four months prior to the

hearing plaintiff experienced a lot of hip pain, radiating around the front of his leg into his groin area.  (T. 57).  He testified that during the hearing he was experiencing right foot numbness.  (T. 57).

Plaintiff's wife, Amber Clark, testified she has been married to plaintiff for eleven years. (T. 63).  Since plaintiff became "disabled," she noticed changes in his physical abilities, including the inability to perform simple tasks such as bending over to tie his shoes.  (T. 63).  She usually put on plaintiff's socks and shoes in the morning if he was not wearing sandals.  (T. 63).  She had to help him bathe from the knees down.  (T. 63).  She testified she had to "pretty much" take care of all the household tasks and duties, including grocery shopping and cleaning. (T. 63).  They were able to socialize, but not if it required physical activity. (T. 63).

Ms. Clark further testified plaintiff could not do much with their young son.  (T. 64).  Plaintiff spent time outdoors with their son, but he was "not really able" to throw a ball or play catch.  (T. 64).  "He just can't do the physical activities with [their son] at all." (T. 64).  She testified plaintiff could not sit on the floor to build a lego house for more than three or four minutes without having to stand up, because it hurt his back to sit.  (T. 64).  She does all the shoveling of their walkways, and they have been hiring people to come and mow the yard and trim.  (T. 65).  Plaintiff cannot mow for more than fifteen minutes without stopping.  (T. 65-66).

Ms. Clark testified "[plaintiff] doesn't sleep, ever."[5]  (T. 65).  She did not believe

---

[5] Ms. Clark's testimony appears to be exaggerated on this issue, as she later testified plaintiff will "fall asleep for two or three hours and sleep soundly," and then he is wide awake. (T. 65).

the pain medicine helps him to rest. (T. 65). Plaintiff was "awful" when he came home from work. (T. 65). He got ice packs and would lie down for 30 to 45 minutes before he came out for dinner. (T. 65). Some nights he did not eat dinner because he was "in so much pain." (T. 65).

The plaintiff's brief (at 1-9, Dkt. No. 7) and the ALJ's decision (T. 26-33) provide a detailed statement of the medical and other evidence of record. Rather than reciting this evidence at the outset, the court will discuss the relevant details below, as necessary to address the issues raised by plaintiff.

## IV.  **THE ALJ'S DECISION**

The ALJ first found that plaintiff met his insured status through December 31, 2019. (T. 28). Plaintiff had not engaged in substantial gainful activity since his alleged onset date of December 16, 2013.[6] *Id.* At step two of the sequential evaluation, the ALJ found that plaintiff's lumbar spine degenerative disc disease, status-post surgery, was severe. *Id.* At step three of the evaluation, the ALJ found that plaintiff's severe impairment did not meet or medically equal the severity of any Listed Impairment. (T. 28-29). In making this determination, the ALJ considered Listing 1.04 (Disorders of the Spine). (T. 28). The ALJ found that plaintiff did not have nerve root compression, spinal arachnoiditis or lumbar spinal stenosis as required by the Listing, nor did his back disorder result in an inability to ambulate effectively.[7] *Id.*

---

[6] In his decision the ALJ noted plaintiff's archery shop earnings with respect to this inquiry, however the ALJ justified his finding inasmuch as plaintiff's earnings from said business did not rise to the level of substantial gainful activity. *See* 20 C.F.R. §404.1575.

[7] There is no dispute that plaintiff does not meet the requirements of a Listed Impairment.

8

At step four, the ALJ found that plaintiff could perform the full range of exertional requirements of sedentary work. (T. 29-32). Plaintiff could lift and carry up to ten pounds occasionally and less than ten pounds frequently. (T. 29). He could sit for six hours in an eight-hour workday, and stand/walk for two hours in an eight-hour workday. *Id*. In making this RFC determination, the ALJ stated that he considered all of the plaintiff's symptoms, and the extent to which those symptoms could "reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 C.F.R. § 404.1529" and Social Security Ruling ("SSR") 96-4p. *Id*. Finally, the ALJ stated he considered opinion evidence in accordance with the requirements of 20 C.F.R. § 404.1527 and SSRs 96-2p, 96-5p, 96-6p and 06-3p. *Id*.

The ALJ also found that plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the plaintiff's statements as to the intensity, persistence and limiting effects of those symptoms were not "entirely consistent with the medical evidence and other evidence in the record." *Id*. The ALJ then determined that plaintiff was unable to perform any of his past relevant work. (T. 32). However, he also found that "considering the [plaintiff]'s age, education, work experience and residual functional capacity," there are jobs that exist in significant numbers in the national economy that the [plaintiff] can perform. *Id*. Accordingly, the ALJ determined that plaintiff was not disabled from December 16, 2013 through the date of the ALJ's decision. (T. 32-33).

## V.    ISSUES IN CONTENTION

Plaintiff raises the following arguments:

1.    The Commissioner failed to support his findings regarding plaintiff's RFC with substantial evidence.

2.    The Commissioner failed to properly evaluate the testimony of the witness at the hearing.

3.    The Commissioner failed to properly evaluate plaintiff's credibility and subjective complaints of disabling symptoms.

(Pl.'s Br. at ii, iii).  Defendant argues that the Commissioner's decision is supported by substantial evidence in the record and is based upon the application of correct legal standards; and should be affirmed.  (T. 1).

For the reasons stated below, this court concludes that the ALJ erred in evaluating the medical opinion evidence.  The court also finds that the ALJ's RFC determination was not supported by substantial evidence, particularly with respect to plaintiff's capacity for sitting.  The ALJ's erroneous RFC assessment tainted the finding, at step five, that plaintiff was not disabled.  Accordingly, this court must remand for further administrative proceedings to properly assess the medical evidence in connection with the Commissioner's RFC analysis and determination of plaintiff's ultimate ability to perform other work.

## VI.    RFC EVALUATION/TREATING PHYSICIAN/STEP FIVE ANALYSIS

### A.    Legal Standards

#### 1.    RFC

RFC is "what [the] individual can still do despite his or her limitations."

Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis . . . ." A "regular and continuing basis" means eight hours a day, for five days a week, or an equivalent work schedule. *Balles v. Astrue*, No. 3:11-CV-1386, 2013 WL 252970, at *2 (N.D.N.Y. Jan. 23, 2013) (citing *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quoting SSR 96–8p, 1996 WL 374184, at *2)).

In rendering an RFC determination, the ALJ must consider objective medical facts, diagnoses and medical opinions based on such facts, as well as a plaintiff's subjective symptoms, including pain and descriptions of other limitations. 20 C.F.R. § 404.1545. *See Martone v. Apfel*, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999) (citing *LaPorta v. Bowen*, 737 F. Supp. 180, 183 (N.D.N.Y. 1990)). An ALJ must specify the functions plaintiff is capable of performing, and may not simply make conclusory statements regarding a plaintiff's capacities. *Martone*, 70 F. Supp. 2d at 150 (citing *Ferraris v. Heckler*, 728 F.2d 582, 588 (2d Cir. 1984); *LaPorta v. Bowen*, 737 F. Supp. at 183; *Sullivan v. Secretary of HHS*, 666 F. Supp. 456, 460 (W.D.N.Y. 1987)). RFC can only be established when there is substantial evidence of each physical requirement listed in the regulations. *Id.* (citing *LaPorta v. Bowen,* 737 F. Supp. 180, 183 (N.D.N.Y. 1990)). The RFC assessment must also include a narrative discussion, describing how the evidence supports the ALJ's conclusions, citing specific medical facts, and non-medical evidence. *Trail v. Astrue*, No. 5:09-CV-1120, 2010 WL 3825629 at *6 (N.D.N.Y. Aug. 17, 2010) (citing Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *7).

As noted above, the ALJ determined that plaintiff had the RFC to perform the full range of sedentary work. (T. 29). Under 20 C.F.R. §404.1567(a), sedentary work is defined as follows:

> [L]ifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

Social Security Ruling 96-9p elaborates on the requirements of sedentary work:

> In order to perform a full range of sedentary work, an individual must be able to remain in a seated position for approximately 6 hours of an 8-hour workday, with a morning break, a lunch period, and an afternoon break at approximately 2-hour intervals. If an individual is unable to sit for a total of 6 hours in an 8-hour work day, the unskilled sedentary occupational base will be eroded. The extent of the limitation should be considered in determining whether the individual has the ability to make an adjustment to other work.
>
> . . .
>
> An individual may need to alternate the required sitting of sedentary work by standing (and, possibly, walking) periodically. Where this need cannot be accommodated by scheduled breaks and a lunch period, the occupational base for a full range of unskilled sedentary work will be eroded. The extent of the erosion will depend on the facts in the case record, such as the frequency of the need to alternate sitting and standing and the length of time needed to stand. The RFC assessment must be specific as to the frequency of the individual's need to alternate sitting and standing. It may be especially useful in these situations to consult a vocational resource in order to determine whether the individual is able to make an adjustment to other work.

1996 WL 374185, at *6-7.

### 2.    Treating Physician

"Although the treating physician rule generally requires deference to the medical opinion of a claimant's treating physician, . . . the opinion of the treating physician is not afforded controlling weight where . . . the treating physician issued opinions that are not consistent with other substantial evidence in the record . . . ." *Halloran v. Barnhart*, 362 F.3d 28, 32 (2004); *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002); 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).  The ALJ must properly analyze the reasons that a report of a treating physician is rejected.  *Halloran*, 362 F.3d at 32-33.  An ALJ may not arbitrarily substitute her own judgment for competent medical opinion.  *Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999).

### 3.    Step Five Analysis

At step five of the disability analysis, the burden of proof shifts to the ALJ to demonstrate that there is other work in the national economy that plaintiff can perform.  *Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009).  In the ordinary case, the ALJ carries out this fifth step by applying the applicable Medical-Vocational Guidelines ("Guidelines").  *Id.* (citing *Rosa v. Callahan*, 168 F.3d at 78)).

"If a claimant has nonexertional limitations that 'significantly limit the range of work permitted by his exertional limitations,' the ALJ is required to consult with a vocational expert[,]" rather than relying solely on the Guidelines.  *Zabala v. Astrue*, 595 F.3d 402, 410 (2d Cir. 2010) (*citing Bapp v. Bowen*, 802 F.2d 601, 605 (2d Cir. 1986)).  The requirement for a vocational   ("VE") expert is triggered when a nonexertional or additional impairment causes an "additional loss of work capacity

beyond a negligible one or, in other words, one that so narrows a claimant's possible range of work as to deprive him of a meaningful employment opportunity." *Bapp v. Bowen*, at 605-06. The appropriateness of applying the Guidelines and the necessity for expert testimony must be determined on a case-by-base basis. *Id*. at 605.

## B. Medical Evidence

As previously discussed, the ALJ concluded that plaintiff retained the residual functional capacity to perform the "full range of sedentary work." (T. 29). In reaching the RFC determination, the ALJ gave "significant weight" to the opinion of non-examining medical expert, Louis Fuchs, M.D. (T. 31). On November 24, 2016, after reviewing most of the medical evidence in the record, Dr. Fuchs completed a Medical Source Statement ("MSS") of Ability to Do Work-Related Activities (Physical) form. (T. 722-31). Dr. Fuchs opined that plaintiff was capable of lifting and carrying up to ten pounds continuously, 11 to 20 pounds occasionally, and never more than 20 pounds. (T. 725). He concluded that plaintiff could sit for one hour at a time, stand for one hour at a time, and walk for one hour at a time. *Id.* He opined that plaintiff could, in an eight hour workday, sit for six hours, stand for two hours, and walk for two hours. (T. 726). Dr. Fuchs further stated that plaintiff could frequently reach overhead and continuously reach in all other directions, handle, finger, feel, push and pull. (T. 727).[8] The ALJ noted Dr. Fuchs' opinion was consistent with the

---

[8] Dr. Fuchs further opined that plaintiff could never climb ladders or scaffolds, and could occasionally climb stairs and ramps, balance, stoop, kneel, crouch and crawl. (T. 728). Dr. Fuchs also found that plaintiff could never tolerate vibrations; occasionally tolerate unprotected heights, humidity and wetness, extreme cold and extreme heat; frequently tolerate operating a motor vehicle, and continuously tolerate moving mechanical parts. (T. 729).

objective findings and the longitudinal history of treatment. (T. 31).

The ALJ also gave "significant weight" to the opinion of Nader Wassef, M.D., who performed a consultative examination of plaintiff on September 17, 2014. (T. 419-22). During the examination, plaintiff demonstrated a normal gait, and needed no assistance changing for the examination, getting on and off the examination table, or rising from the chair. (T. 421). Plaintiff had full flexion and extension in his cervical spine. *Id*. His thoracic and lumbar spine exhibited flexion and extension of about 70 degrees. *Id*. He had a positive right Straight Leg Raise Test at 60 degrees confirmed in the sitting up position. *Id*. Plaintiff did not exhibit any spasms or trigger points to the thoracic and lumbar spine. *Id*. He had full range of motion in the shoulders, elbows, forearms, wrists, and fingers bilaterally, intact hand and finger dexterity, and full strength in the upper and lower extremities. *Id*. Plaintiff's lower extremities exhibited full range of motion of hips, knees, and ankles. (T. 421). Deep tendon reflexes were 1+ in the knees and left ankle, with no response to the right ankle deep tendon reflex. (T. 421-22).

Dr. Wassef opined that plaintiff had "marked limitations in regard to standing, walking, climbing and descending stairs, bending, squatting, lifting, sitting in a car for a long period of time, driving a car, and operating foot controls." (T. 422). The ALJ noted Dr. Wassef's opinion was consistent with the results of his physical examination of plaintiff. (T. 31). He also found it consistent with the "record as a whole." *Id.*

The ALJ gave "less weight" to several opinions of treating physician Mukta Gupta, M.D. (T. 31). In a December 2, 2014 Complete Medical Report (Physical)

form, Dr. Gupta opined that plaintiff could frequently lift and carry up to ten pounds, occasionally climb, balance, kneel, crouch, and crawl, and never stoop. (T. 468-69). She also found that plaintiff could stand and/or walk at least two hours in an eight hour work day. (T. 468). Dr. Gupta further opined that plaintiff must periodically alternate sitting and standing to relieve pain or discomfort. (T. 469). Plaintiff was found to be limited in his ability to push and pull. *Id.* Dr. Gupta noted limitations in plaintiff's ability to handle and be exposed to temperature and hazards. *Id.* The opinion is primarily a check-box form. Notably, the majority of limitations set forth in Dr. Gupta's opinion are specified to be "as per patient." (T. 468-469).

The ALJ also discussed a July 25, 2016 MSS prepared by Dr. Gupta. (T. 31, 665). At that time, Dr. Gupta opined that plaintiff could occasionally lift and carry up to ten pounds. *Id.* She also stated that plaintiff could sit, stand and walk for 30 minutes at a time, and in an eight-hour work day could sit for two hours, stand for two hours, and walk for two hours, with resting in between. (T. 666). Plaintiff could occasionally reach overhead, handle, finger, feel, push, pull and operate foot controls, and frequently reach in all other directions. (T. 667). She indicated plaintiff could occasionally climb stairs, ramps, ladders and scaffolds, and balance, and never stoop, kneel, crouch, or crawl. *Id.*[9]

The ALJ noted that Dr. Gupta's opinions represented an ability to perform less than the full range of sedentary work. (T. 31). The ALJ proceeded to find that Dr.

---

[9] Dr. Gupta further opined that plaintiff could occasionally work around unprotected heights, moving mechanical parts, vibrations, and extreme temperatures, and frequently operate a motor vehicle and work around humidity, wetness, dust, odors fumes, and pulmonary irritants. (T. 668-69).

Gupta's opinions were entitled to less than controlling weight to the extent that her assessments of plaintiff's limitations were "based on the [plaintiff]'s own report and not on objective findings of record." *Id*.

## C. Analysis

The opinion evidence of all the physicians who treated plaintiff, as well as the testimony of plaintiff and his wife, indicate that he had limitations for sitting that would interfere with his ability to perform the full range of sedentary work. The ALJ, however, rejected the medical opinions by treating physician, Dr. Gupta, and afforded them less than controlling weight, finding that they were not based on objective findings of record. (T. 31). Furthermore, ALJ Ramos found that plaintiff's statements concerning the intensity, persistence and limiting effects of his symptoms were not entirely consistent with the medical evidence and other evidence in the record. (T. 29). The ALJ found that plaintiff could perform the full range of sedentary work, affording "significant weight" to the opinions of consulting examiner Dr. Wassef and non-examining medical expert Dr. Fuchs.

Remand of this case is required because the ALJ's RFC determination is not supported by substantial evidence. First, Dr. Wassef's opinion does not constitute substantial evidence to support an RFC to perform the full range of sedentary work. Although admittedly vague[10], Dr. Wassef's opinion regarding plaintiff's "marked

---

[10] "The use of the terms 'mild,' 'moderate,' and 'marked' to describe the plaintiff's restrictions in 'sitting, standing, and walking' are the kind of vague terms which some courts have found insufficient to support a determination that a plaintiff is not disabled under the Act." *Williams v. Berryhill*, 16-CV-5606, 2018 WL 4636962, at *20 (E.D.N.Y. Sept. 27, 2018) (quoting *Brady v. Colvin*, No. 14-CV-5773, 2016 WL 1448644, at *8 (E.D.N.Y. Apr. 12, 2016).

limitations," particularly with respect to prolonged sitting, contradict the ALJ's implied conclusion, without further explanation, that plaintiff could sit for six hours of an eight-hour workday at "approximately" two hour intervals. *See, e.g.*, *Petersen v. Astrue*, 2 F. Supp. 3d 223, 233 (N.D.N.Y. 2012) (the ALJ afforded "great weight" to Dr. Magurno's opinion; however, this consultative examiner's assessment that plaintiff had "marked limitations for walking, standing, bending, pushing, pulling, lifting, and carrying" and "moderate limitations for sitting an[d] reaching" do not support the ALJ's conclusion that plaintiff retained the RFC to perform sedentary work) (Rep't-Rec.), *adopted*, 2012 WL 4449663 (N.D.N.Y. Sept. 25, 2012); *York v. Comm'r of Soc. Sec.*, No. 17-CV-6676L, 2019 WL 1029014, at *2 (W.D.N.Y. Mar. 5, 2019) (a consultative examiner opined that plaintiff had moderate to marked limitations standing, walking, bending, lifting and carrying, and moderate limitations sitting for more than 30 minutes at a time; the ALJ's conclusory re-interpretation of the doctor's findings to determine that plaintiff could perform the requirements of sedentary work, based on the ALJ's lay interpretation of raw medical data, was not supported by substantial evidence); *Young v. Comm'r of Soc. Sec.*, No. 7:13-CV-734 (NAM/ATB), 2014 WL 3107960, at *9 (N.D.N.Y. July 8, 2014) (consultative examiner's conclusion regarding the "moderate" limitations on plaintiff's ability to sit does not provide substantial evidence for the ALJ's conclusion that she could sit for six hours of an eight-hour workday, at least without additional restrictions). Dr. Wassef's opinion further fails to provide support for the ALJ's apparent determination that plaintiff's statements about his limited ability to sit were not credible. *See, e.g.,*

*Young*, 2014 WL 3107960, at *9.[11]

Furthermore, Dr. Fuchs' opinion, when considered in light of the remaining medical evidence and testimony, does not rise to the level of substantial evidence to support the RFC for full range of sedentary work. *See Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008) (the opinion of a non-examining physician may be deemed not "sufficiently substantial to undermine the opinion of the treating physician" when it is not adequately supported by evidence in the record). Dr. Fuchs opinion took the form of a check-box interrogatory, based on plaintiff's medical records alone. (T. 721-32). Despite being prompted to do so at various places in the MSS, Dr. Fuchs failed to support his assessment of plaintiff's particular limitations with references to any specific, objective medical evidence. (T. 725-30). Dr. Fuchs' only reference to medical records was in his response to interrogatories, and the records were apparently cited in support of the very general statement: "Exams consistently have been decent neurologically and showed painful spinal motions." (T. 722, citing T. 351, 365, 367,

---

[11] In light of the court's finding that this case must be remanded because of the ALJ's errors in evaluating the medical opinion evidence, analyzing plaintiff's RFC, and the disability determination at step five, it is not necessary to address, in detail, the issues raised by plaintiff regarding the ALJ's assessment of the credibility of the statement of the plaintiff and his wife. On remand, the Commissioner should "'carefully consider'" all the evidence presented by claimants regarding their symptoms, which fall into seven relevant factors including 'daily activities' and the 'location, duration, frequency, and intensity of [their] pain or other symptoms.'" *Del Carmen Fernandez v. Berryhill*, No. 18-CV-326, 2019 WL 667743, at *9 (S.D.N.Y. Feb. 19, 2019) (citing 20 C.F.R. § 404.1529(c)(3); Social Security Ruling (SSR) 16-3p, *Titles II and XVI: Evaluation of Symptoms in Disability Claims*, 81 FR 14166-01 at 14169-70, 2016 WL 1020935 (Mar. 16, 2016), republished at 2017 WL 5180304 (Oct. 25, 2017)). The evaluation of symptoms (which no longer uses the term "credibility") involves the two-step process described in 20 C.F.R. §§ 404.1529(a), (b); 416.929(a), (b).

375, 419-22, 479, 490, 506, 589, 656, 662, 702).[12]  The only references to plaintiff's

capacity for sitting in the cited treatment records stated:  "Sitting makes his right leg

pain much worse.  He prefers to stand." (T. 375 (1/7/2014)); "His back pain has been

worsening and he cannot even sit straight up in the office today." (T. 663

(7/11/2016)); and "Pain is better with sitting and lying down and worse with driving,

walking, . . . going up/down stairs." (T. 701 (9/8/2016)).

Notably, Dr. Fuchs' opinion is at odds with those of plaintiff's treating

physicians and consultative examiner, Dr. Wassef (whose report was cited in Dr.

Fuchs' interrogatory responses (T. 722)), who found that plaintiff had "marked"

limitations, including for sitting in a car for a long period of time (T. 422).  This court

finds the ALJ incorrectly assigned controlling weight to the opinion of Dr. Fuchs, who

never examined plaintiff, notwithstanding his expertise.  *See, e.g., Ridge v. Berryhill*,

294 F. Supp. 3d 33, 60 (E.D.N.Y. 2018) (ALJ improperly accorded controlling weight

to medical expert's opinion, in an interrogatory based on claimant's medical records

alone, when expert never examined claimant, and his opinion was at odds with those

of his treating physicians); *Destina v. Berryhill*, No. 2:17-CV-02382, 2018 WL

4964103, at *7-8 (E.D.N.Y. Oct. 15, 2018) (the ALJ inappropriately gave "great

weight" to the opinion of Dr. L. Fuchs, a non-examining medical expert who did not

---

[12] It appears that Dr. Fuchs did not have the medical records in Exhibits 33F and 34F (T. 733-38) at the time he documented his opinions.  These medical records reported, inter alia, that, as of late 2016, plaintiff's chronic low back pain was worsening and was not relieved by epidural steroid injections; he had significant tenderness and limited flexion due to pain; his pain medication included Hydrocodone, which was being increased; plaintiff had positive Straight Leg Raise Test to 90 degrees bilaterally; and he was scheduled for further injections, a TENS unit, and a re-evaluation at the Laser Spine Institute in Cleveland.  (T. 736, 737).

consider all of the medical evidence and whose opinion was inconsistent with that of two treating physicians); *Gallishaw v. Comm'r of Soc. Sec.*, 296 F. Supp. 3d 484, 498-99 (E.D.N.Y. 2017) (the report of non-examining orthopedic surgeon, Dr. Fuchs was "remarkably vague" and not supported by, or inconsistent with, the medical records he cited; Dr. Fuchs' report "may properly be discounted as insufficiently substantial to undermine the opinion of [plaintiff's treating doctor], which is otherwise consistent with the record").

The ALJ may have had a proper basis to treat the opinion of treating physician Dr. Gupta with less than controlling weight, to the extent her opinion was not based on objective findings of record, but largely on the subjective complaints of the plaintiff. (T.468-69). *See Polynice v. Colvin,* 576 F. App'x 28, 31 (2d. Cir. 2014); *Lewis v. Colvin*, 548 F. App'x 675, 678 (2d. Cir. 2013). The ALJ may not, however, substitute his own judgment for competent medical opinion in the course of discrediting the treating physician's opinion. *See Rosa*, 168 F. 3d at 79. In rejecting Dr. Gupta's opinion, the ALJ improperly substituted his own lay judgment for competent medical opinion, based on the lack of any objective medical evidence demonstrating plaintiff had the capacity to perform the full range of sedentary work, particularly with respect to sitting. Even Dr. Fuchs opined that plaintiff could only sit for a maximum of one hour at a time without interruption. (T. 726). As previously discussed, an RFC for sedentary work contemplates being seated for approximately six hours, at approximately two hour intervals. 20 C.F.R. §404.1567(a), 1996 WL 374185, at *6-7. "In short, the [ALJ's] conclusion that [plaintiff] could perform the full range of

sedentary work is speculative, and is not supported by substantial evidence,"
warranting remand. *Petersen*, 2 F. Supp. 3d at 234 ("This court cannot re-weigh the
evidence on the ALJ's behalf or create a post-hoc explanation for the fact he gave
great weight to an opinion that contradicted his RFC assessment."); *Williams v.
Berryhill*, 16-CV-5606, 2018 WL 4636962, at *20 (E.D.N.Y. Sept. 27, 2018) (the
ALJ's finding that plaintiff could perform the full range of sedentary work, based
largely on the opinion of an non-examining medical expert which was inconsistent
with two doctors' opinions that plaintiff had limitations with sitting for prolonged
periods, was not supported by substantial evidence).

Upon determining plaintiff's RFC, the ALJ used the Medical Vocational
Guidelines in reaching his disability determination. Specifically, the ALJ concluded
that, based on an RFC for the full range of sedentary work, a finding of "not disabled"
was directed by Medical-Vocational Rule 201.28 and Rule 201.21. (T. 32). However,
the ALJ erred in his evaluation of the medical evidence, and that his RFC
determination, particularly with respect to plaintiff's ability to sit for prolonged
periods, was not supported by substantial evidence.[13] As a result, the ALJ's step five
analysis was also tainted, and will require re-examination on remand.

The lack of substantial evidence regarding plaintiff's sitting capacity suggests a
significant erosion of his ability to perform a full range of sedentary work. If after a
proper review of the existing and updated medical and other evidence, the

---

[13] Based on these conclusions, the court need not fully review the ALJ's analysis
regarding the evaluation of plaintiffs other limitations. However, on remand the Commissioner
should properly evaluate all of plaintiff's limitations by considering and referencing the
symptom-related factors set forth in 20 C.F.R. §§404.1529(c)(3), 416.929(c)(3).

Commissioner determines that plaintiff has additional limitations that are inconsistent with the full range of sedentary work, the assistance of a vocational expert will likely be required on remand to support the step five analysis. *See, e.g., Reff v. Comm'r of Soc. Sec.*, No. 8:13-CV-1326 (LEK/ATB), 2015 WL 1178764, at *9-10 (N.D.N.Y. Mar. 13, 2015) ( to the extent the Commissioner determines, on remand, that the plaintiff's limitations impair his ability to perform the full range of sedentary work, the Commissioner should consult a VE or, at a minimum, properly apply the Guidelines as a "framework"); *Hayes v. Comm'r of Soc. Sec.*, 1:13-CV-1566 (MAD/ATB), 2015 WL 1033058, at *10 (N.D.N.Y. Mar. 9, 2015).

## VIII.  <u>NATURE OF REMAND</u>

"When there are gaps in the administrative record or the ALJ has applied an improper legal standard . . . remand to the Secretary for further development of the evidence" is generally appropriate. *Parker v. Harris*, 626 F.2d 225, 235 (2d Cir. 1980). This court cannot conclude that "substantial evidence on the record as a whole indicates that the [plaintiff] is disabled[,]" and thus, I cannot recommend a remand solely for the determination of benefits. *See Bush v. Shalala*, 94 F.3d 40, 46 (2d Cir. 1996).

**WHEREFORE,** based on the findings above, it is hereby

**ORDERED**, that the decision of the Commissioner IS **REVERSED** and this case **REMANDED**, pursuant to sentence four of 42 U.S.C. § 405(g), for a proper evaluation of all of the medical and other evidence, an appropriate determination of plaintiff's residual functional capacity, and other further proceedings, consistent with

this Memorandum-Decision and Order, and it is

ORDERED, that the Clerk enter judgment for **PLAINTIFF**.

Dated:  March 14, 2019

Hon. Andrew T. Baxter
U.S. Magistrate Judge